UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATIVIDAD EDWARDS, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05CV1238 (JCH) |
| NEW OPPORTUNITIES INC. et. al., | : | |
| Defendants | : | MARCH 26, 2007 |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS [Doc. Nos. 101, 104, & 108]**

**I.     INTRODUCTION**

The plaintiff, Natividad Edwards ("Edwards"), brings suit against New

Opportunities, Inc. ("NOI") and a number of individual defendants,[1] alleging claims that

arose from her employment by the Connecticut Department of Labor's Workforce

Connection Project.  In her Third Amended Complaint [Doc. No. 98], Edwards alleges

hostile work environment, constructive discharge, and retaliation under Title VII of the

United States Code, 42 U.S.C. § 2000e et. seq. and the Connecticut Fair Employment

Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a).  She has also asserted an

aiding and abetting claim against the individual defendants pursuant to Conn. Gen.

Stat. § 46a-60(a)(5), and she has asserted state law claims of negligent and intentional

infliction of emotional distress.

Three motions to dismiss have been filed by the various defendants.  One

motion was filed by New Opportunities, Inc. ("NOI") [Doc. No. 101], another motion was

filed by Mary Carr [Doc. No. 104], and the third motion was filed by Catherine Awwad

---

[1]Catherine Awwad, Ivory Anders, Mary Carr, Tracy Georgio, Tony Hirst, Kathleen
Maness, Shanae McIntyre, Lynn Musto, Barbara Place, and Darlene Tynan.

1

and Darlene Tynan [Doc. No. 108].  Edwards has filed one Memorandum in Opposition [Doc. No. 107], addressing all three motions simultaneously because they involve many overlapping arguments.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss, the court takes the allegations of the Complaint as true, and construes them in a manner favorable to the pleader.  Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  The court must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Yung v. Lee, 432 F.3d 132, 146 (2d Cir. 2005) (discussing Rule 12(b)(6) motion to dismiss); Lunney v. United States,  319 F.3d 550, 554 (2d Cir. 2003) (internal citations omitted) (discussing Rule 12(b)(1) motion to dismiss).

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), tests only the adequacy of the complaint.  United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004).  A Rule 12(b)(6) motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation omitted).  However, "bald assertions and conclusions of law will not suffice" to meet this pleading standard.  Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.

1996).

## III.    FACTS[2]

Edwards, who is of Mexican national origin, was hired in July 2001 by the City of

Waterbury as a bilingual receptionist for the Work Force Connection ("WFC") program.

Her responsibilities included translating, answering, and processing telephone calls

from potential clients, delivering bus passes, and other reception services.  Beginning

around March 2002, Edwards' direct supervisor was Maness, WFC's Director of

Operations.  Maness reported to Awwad, the Executive Director of the Northwest

Regional Work Force Investment Board, Inc.

Around May 2003, NOI took over administration of the WFC from the City of

Waterbury, and Edwards became a bilingual receptionist for NOI.  Edwards, who

speaks with a strong accent and is shorter than the average woman, which she

attributes to her Mexican heritage, asserts that she was subjected to a hostile work

environment based on her Mexican race and national origin.  She alleges that she was

constantly ridiculed because of her accent: employees made fun of her by repeating her

when she paged others to answer phone calls or assist with client inquiries.  Thus, for

example, a page for Darlene Tynan was repeated as "Darrrlene Tynannn."

When Edwards complained to Maness and Awwad about the behavior of her co-

employees, they stated it was all in good fun and failed to take any corrective action.

Edwards alleges that Maness referred to her as illiterate, and that she and Awwad,

along with others, made fun of Edwards' interest in pursuing a college degree, making

---

[2]The court takes the facts alleged in the Third Amended Complaint [Doc. No. 98] as true
for purposes of this motion and draws all reasonable inferences in the plaintiff's favor.

such statements as: "What is she thinking, she can't even speak English." Moreover, after Tynan, an employee of Northwest Regional who was supervised by Maness and Awwad, referred to Edwards as Dopey of Snow White and the Seven Dwarfs, other employees similarly called her Dopey without Maness or Awwad taking any corrective action.

On January 23, 2004, Edwards claims that Mary Carr, an employee of the John Driscoll United Labor Agency ("JDULA"), assaulted her without reason. After Maness found both individuals at fault, Edwards reported the incident to Carr's supervisor, John O'Connor, who was also the Director of JDULA. Edwards then received a verbal warning for insubordination from Maness for having complained to O'Connor about the behavior of his employee.

On March 25, 2004, Edwards' accent was again ridiculed when she paged Bernice Hill. Later that same day, Edwards was given a verbal warning by Maness for having allegedly made a joke about Tynan's weight on the intercom. On April 6, 2004, Edwards received a poor evaluation, which she appealed to Tony Hirst, Director of Research, Development and Planning for NOI. Hirst told Edwards to participate in an Employee Assistance Program ("EAP"), and Edwards received a disciplinary warning when she refused to do so.

Edwards filed a discrimination complaint with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") on May 21, 2004, and sent a copy of that complaint to the Equal Employment Opportunity Commission ("EEOC"). Edwards claims she was then retaliated against for having filed her CCHRO complaint, because she was subjected to continued insults and ridicule, was chastised and implicitly

4

threatened for having filed her "whistleblower" complaint, had some of her job duties

removed, and was wrongly blamed for misappropriating or losing bus passes.

In August 2004, some of Edwards' co-employees positioned a 9 foot cut-out of

Snow White outside of the building with a happy birthday wish to "Nattie," Edwards'

nickname, even though her birthday was not until six weeks later. On June 29, 2005,

Edwards felt forced to resign from her employment.

## III.    DISCUSSION

### A.    Effect of this Court's Earlier Rulings

The defendants argue that Counts Seven, Eight, and Nine should be dismissed

as against all individual defendants[3] because this court had previously dismissed all

claims against them with prejudice. The court disagrees with that argument. In its

August 25, 2006 Ruling on Plaintiff's Responses to the Court's Order to Show Cause

("Ruling (8/25/06)") [Doc. No. 73], at 12, this court dismissed with prejudice "all

remaining claims against individual defendants that have been asserted pursuant to

Title VII or Conn. Gen. Stat. § 46a-60(a)(1)." That Ruling did not address, and

therefore did not dismiss with prejudice, any claims regarding violations of Conn. Gen.

Stat. § 46a-60(a)(5), negligent infliction of emotional distress, or intentional infliction of

emotional distress, and this court will not construe its previous Ruling to encompass

such a sweeping dismissal, particularly considering that Edwards was proceeding <u>pro</u>

<u>se</u> at the time of this court's previous Rulings, but has since been appointed

---

[3]Defendant Catherine Awwad is only moving to dismiss Counts VIII and IX of the Third Amended Complaint, since in an earlier Ruling this court refused to dismiss the claim against Awwad as stated in Count VII, which alleges that Awwad aided and abetted discriminatory practices in violation of Conn. Gen. Stat. § 46a-60(a)(5). <u>See</u> June 15, 2006 Ruling on Defendants' Partial Motions to Dismiss ("Ruling (6/15/06)") at 7 [Doc. No. 66].

experienced counsel to assist her in this matter.

As for the defendants' assertion that this court's instructions regarding any amendment of Edwards' complaint have the effect of precluding Edwards from filing any new claims against the defendants, the court finds that this argument is also without merit. While it is true that this court gave express instructions about Edwards' opportunity to amend her complaint, see Ruling (8/25/06) at 12, those instructions only made it clear that Edwards could not re-plead any claims that had already been dismissed with prejudice by this court; they did not expressly or implicitly limit Edwards from amending her complaint to add new claims.

According to the liberal mandate of Fed. R. Civ. P. 15(a), leave to amend a complaint should be freely given by the trial court when justice so requires. Prescription Plan Service Corp. v. Franco, 552 F.2d 493, 498 (2d Cir.1997). The Supreme Court has emphasized that amendment should normally be permitted and has stated that refusal to grant leave without justification is "inconsistent with the spirit of the Federal Rules." Rachman Bag Co. v. Liberty Mutual Insurance, 46 F.3d 230, 235 (2nd Cir.1995) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). The Supreme Court has also held that, "[i]n the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . etc.–the leave should, as the rules require, be 'freely given.'"[4] Foman, 371 U.S. at

---

[4]While Edwards should perhaps have moved to amend to permit the new claims now asserted but never addressed by the court, it is not unreasonable for counsel to have assumed that the permission to file an amended complaint included the right to add additional claims. To the extent leave was required, the court grants it.

182.  With her Third Amended Complaint, filed in good faith and for the first time by experienced counsel, this court will not preclude Edwards from bringing Counts Seven, Eight, and Nine based on its prior Rulings.[5]

### B.    Individual Defendants – Aiding and Abetting (Count Seven)

The individual defendants, except for Awwad, argue that Edwards' CFEPA aiding and abetting claim should be dismissed against them because it is barred by the statute of limitations, and it fails on the merits.  As for the first argument, although the defendants label this as a statute of limitations issue, the court will construe it as an exhaustion issue, for the essence of their argument is that Edwards is barred from bringing this claim because they were not named in the discrimination complaint Edwards filed with the CCHRO, while she was required to file a complaint against them within 180 days of the alleged acts of discrimination.  Section 46a-82(e) of the Connecticut General Statutes requires a complaint under the CFEPA to be filed "within one hundred and eighty days after the alleged act of discrimination," although this requirement is subject to waiver and equitable tolling.  See Conn. Gen. Stat. § 46a-82(e); Williams v. Comm'n on Human Rights and Opportunities, 257 Conn. 258, 264 (2001).  Edwards is not arguing that waiver and equitable tolling should apply; instead,

---

[5]The defendants' argument that res judicata bars Edwards from bringing the new claims against the individual defendants is also without merit, for, as stated above, the court only dismissed all pending claims against the individual defendants, that is, it dismissed with prejudice those claims brought under Title VII and Conn. Gen. Stat. § 46-60(a)(1) because there is no individual liability for violations under Title VII or the parallel provision under CFEPA. See June 15, 2006 Ruling at 6.  However, individual defendants, even if not employers, may be liable for violations of  Conn. Gen. Stat. § 46a-60(a)(5). Perodeau v. City of Hartford, 259 Conn. 729, 737-38 (2002).  Although Edwards did not previously plead such violations against the individual defendants, other than Awwad, the court is mindful that "'[a] pro se complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000) (citations omitted).

Edwards is relying on Connecticut case law, especially <u>Malasky v. Metal Products Corp.</u>, 44 Conn. App. 446 (1997), that allows a complainant to maintain claims against individuals not named in her CCHRO complaint under certain circumstances. <u>See</u> Plf.'s Memorandum in Opposition to Summary Judgment ("Mem. in Opp.") at 12 [Doc. No. 107].

As courts in this district have noted, "Connecticut courts have relied upon the limited identity of interests exception adopted by the Second Circuit, to permit 'an action against an unnamed respondent to an EEOC complaint if the underlying dual purposes of the exhaustion requirement are otherwise satisfied,'" that is, notice and an opportunity for voluntary compliance. <u>Peterson v. City of Hartford</u>, 80 F. Supp. 2d 21, (D. Conn. 1999) (citing <u>Malasky</u>, 44 Conn. App. at 453). In <u>Malasky</u>, a <u>pro se</u> plaintiff's failure to name all the individuals specifically as respondents in her CCHRO complaint was excused where they were identified in the body of her complaint. 44 Conn. App. at 455. In making this determination, the court considered four factors: "'1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.'" <u>Id.</u> at 454 (citing <u>Garcia v. Gardner's Nurseries, Inc.</u>, 585 F. Supp. 369, 372 (D.

Conn. 1984)).  The "identity of interests" exception only applies "when plaintiffs were not

represented by counsel at the time they filed their administrative discrimination

charges."  Dallaire v. Litchfield County Ass'n for Retarded Citizens, Inc., 2001 WL

237213, at *3 (D. Conn. 2001).

The court finds that this exception applies in this case.  First of all, Edwards was

not represented by counsel at the time of filing her CCHRO complaint, thus satisfying

the threshold requirement of the exception.  See id.  Furthermore, although Edwards

concedes that she did not name all the defendants in her CCHRO complaint, she

argues that the complaint and its Exhibit A addressed the defendants' involvement with

the alleged discrimination, thus putting them on notice of her allegations of

discrimination.  See Plf.'s Mem. in Opp. at 13.  Moreover, Edwards argues that

defendant NOI responded to her initial CCHRO complaint by letter, which noted that

Edwards had "attack[ed] numerous individuals who work at the Thomaston Avenue

office . . . [alleging that these individuals] are simply acting with a discriminatory animus

toward [her]," and which then went on to deny Edwards' allegations.  See Plf.s Mem. in

Opp. at Ex. B, at 8 [Doc. No. 107].  Defendant Carr also answered the CCHRO

complaint, see id. at Ex. C, and defendant Tynan was named in paragraph 14 of the

initial CCHRO complaint and referred to extensively by name in the attached Exhibit A.[6]

Thus, all of these defendants were given "ample notice of the claims against them," and

the court finds they are not prejudiced.  See Peterson v. City of Hartford, 80 F. Supp. 2d

---

[6]The court notes that Tynan and Awwad's motion to dismiss is the only motion to
extensively address the exhaustion issue with respect to Tynan, despite the fact, detrimental to
these defendants, that Tynan is often named throughout Edwards' CCHRO complaint and
especially its attached Exhibit A.  The NOI defendants have simply adopted Tynan and
Awwad's arguments regarding exhaustion, and have not addressed how the Malasky factors
apply to each of them.

21, (D. Conn. 1999). Therefore, at this stage in the proceeding, the court denies the defendants' motion to dismiss the CFEPA claim against them for failure to exhaust administrative remedies, without prejudice to filing a summary judgment motion on this issue after discovery.

As to the second argument for why Count Seven should be dismissed, that it fails on the merits, section 46a-60(a)(5) of the Connecticut General Statutes makes it unlawful for any person, whether an employee or not,[7] to "aid abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so." Conn. Gen. Stat. § 46a-60(a)(5). Liability lies under this statute when a party in some way "helps or compels" another individual, but not a company, to act in a discriminatory manner. Wasik v. Stevens Lincoln-Mercury,Inc., 2000 U.S. Dist. LEXIS 15438, at *24 (D. Conn. 2000) (citing Bogdahn v. Hamilton Standard Space Sys. Int'l. Inc., 46 Conn. Supp. 153, 159 (Conn. Super. Ct. 1999) (recognizing as a cognizable claim for aiding and abetting conduct whereby an employer and other employees' actions "ratified, endorsed and perpetrated" another employee's harassing conduct). The defendants argue that Edwards has failed to state a claim against the individual defendants for violation of this statute because she does not allege that they either affirmatively aided and ratified or failed to investigate discriminatory practices directed towards her by other individuals during the course of her employment.

However, the Third Amended Complaint, taken together with Edwards' Exhibit A

---

[7]Thus, Mary Carr's argument that she cannot be held liable because she was not an employee of NOI is without merit. See Carr's Mem. in Supp. at 16.

to her CCHRO complaint,[8] provides a sufficient basis for an aiding and abetting claim against the defendants. Her Complaint was premised on "the history of racial abuse that was manifest at the Thomaston site and tolerated by NOI supervisors," which caused her to file a complaint with the CCHRO. See Compl. at ¶ 52. Furthermore, throughout her Third Amended Complaint she has asserted that many of her co-workers and supervisors ridiculed her because of her accent, referred to her as Dopey, or ridiculed her educational interests. See id. at ¶¶ 35-36, 39, 41, 47, 54. For example, Edwards alleges that after Tynan referred to her as Dopey, other co-workers, frequently began using that reference in a demeaning manner. See id. at ¶ 41. Edwards' Third Amended Complaint further states that none of her supervisors took any corrective action, despite being witnesses to, and participants in, some of the alleged discriminatory actions. See id. at ¶¶ 39, 41-42. The court, therefore, can reasonably infer that the defendants aided and abetted in the discriminatory and retaliatory practices directed towards her by her co-workers and supervisors. For these reasons, the court can conclude that there is a possibility that Edwards would be able to state a claim against the defendants for violation of Conn. Gen. Stat. § 46a-60 (a)(5).

Therefore, the court denies the motion to dismiss with respect to Edwards' claim that the defendants aided and abetted discriminatory practices in violation of section 46a-60(a)(5).

---

[8]Edwards' CCHRO complaint, which included Exhibit A, has been referenced in the Third Amended Complaint. "'In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996) (citations omitted).

**B**.     **Negligent Infliction of Emotional Distress** (Count Eight)

The defendants also move to dismiss Edwards' negligent infliction of emotional

distress claim, arguing that claims for negligent infliction of emotional distress arising

out of conduct occurring in the context of a continuing employment relationship, as

opposed to conduct that occurs in the process of a termination of employment, are

barred under Connecticut law.  See Perodeau v. City of Hartford, 259 Conn. 729, 762-

63 (2002) (limiting the scope of negligent infliction of emotional distress tort to conduct

occurring in process of termination).  The question presented is whether Edwards'

constructive discharge qualifies as termination of employment for purposes of a

negligent infliction of emotional distress claim.

This court has addressed the application of constructive discharge to a claim of

negligent infliction of emotional distress in Grey v. City of Norwalk Bd. of Educ., 304 F.

Supp. 2d 314, 331-33 (D. Conn. 2004).  It held that allowing a constructive discharge to

form the basis of a negligent infliction of emotional distress claim is consistent with

Connecticut constructive discharge law, because in a constructive discharge case the

employment relationship is already terminated, allegedly involuntarily, and thus the

effect of allowing the claim is no different than if the plaintiff had been actually

discharged.  See id. at 332.

However, this court also held that conduct that is not sufficiently unreasonable or

wrongful does not support a negligent infliction of emotional distress claim.  Id. at 333.

Indeed, "negligent infliction of emotional distress in the employment context arises only

where it is based upon unreasonable conduct of the defendant in the termination

process." Parsons v. United Techs. Corp., 243 Conn. 66, 88 (1997) (internal quotation

marks omitted); Perodeau, 259 Conn. at 750.  This court ultimately granted summary

judgment to defendants on plaintiff's negligent infliction of emotional distress claim,

because the alleged activities, while wrongful, were not "sufficiently wrongful that the

defendant should have realized that its conduct involved an unreasonable risk of

emotional distress."  Perodeau, 259 Conn. at 571; see Grey, 304 F. Supp. 2d at 333.

     In this case, the defendants argue that Edwards has based her claim of

negligent infliction of emotional distress on the harassment and retaliation that allegedly

took place throughout her employment relationship with NOI.  Edwards counters that

her "termination" began when she filed her CCHRO complaint in May 2004, after which

she was subjected to a series of retaliatory actions.  See Plf.'s Mem. in Opp. at 17-18.

Thus, "the conundrum becomes when does the ongoing employment relationship end

and the termination process begin for purposes of determining what events and

conduct by the employer may be considered in evaluating a negligent infliction of

emotional distress claim."  Pecoraro v. New Haven Register, 344 F. Supp. 2d 840, 846

(D. Conn. 2004).  In Michaud v. Farmington Community Ins. Agency, 2002 WL

31415478, at *3 (Conn. Super. Ct. 2002), the court refused to extend the termination

process to include acts that occurred during the course of the employment relationship,

basing its reasoning on Perodeau's holding that limited the tort to "conduct occurring in

the termination process" as opposed to the "discharge process," which "perhaps would

contemplate a more expansive time frame":

> Conduct justifying the termination, or, on the other hand, compelling the
> resignation, is not itself the actual termination.  Termination means the ending,
> not the conduct which caused the ending.  When one analyzes the policy
> reasons underlying Perodeau, one sees that conduct taking place within the
> employment relationship, even if wrongful and providing the basis for the claim of
> unlawful discharge, cannot provide the factual predicate for the emotional

distress claim.  If the actual termination is conducted wrongfully, then the action
may lie.  If the termination would be said to permeate the entire course of
employment, then the reasoning of <u>Perodeau</u> would be hollow indeed.

<u>Id.</u> at *3.

This court finds that, as in <u>Pecoraro</u> and unlike in <u>Grey</u>, Edwards has alleged no

facts "concerning events that occurred during the resignation process or once plaintiff

terminated her employment."  <u>Pecoraro</u>, 344 F. Supp. 2d at 847; <u>see also</u> <u>Cygler v.</u>

<u>Klingberg Family Centers, Inc.</u>, 2006 WL 3491506, at *8 (Conn. Super. Ct. 2006)

("Count six consists of nothing more than an incorporation of the revised complaint's

previous allegations. . . . Since the plaintiffs do not elaborate about the act of

termination itself their claim of negligent infliction of emotional distress in the

employment context is legally insufficient.").  Thus, the court grants the defendants'

motion to dismiss on this claim.

### C.      **Intentional Infliction of Emotional Distress** (Count Nine)

Finally, the defendants move to dismiss Edwards' intentional infliction of

emotional distress claim.  In order to sustain a claim for intentional infliction of

emotional distress under Connecticut law, a plaintiff must prove: "'(1) that the actor

intended to inflict emotional distress or that he knew or should have known that

emotional distress was the likely result of his conduct; (2) that the conduct was extreme

and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's

distress; and (4) that the emotional distress sustained by the plaintiff was severe.'"

<u>Appleton v. Bd. of Educ. of the Town of Stonington</u>, 254 Conn. 205, 210 (2000)

(citations omitted).  Whether the defendants' conduct was extreme and outrageous is

the initial question for the court to address.  <u>See</u> <u>id.</u>  "Only where reasonable minds

14

disagree does it become an issue for the jury." Id.

To be extreme and outrageous, the defendants' conduct must exceed "all bounds usually tolerated by decent society . . . ." See id. (quotation omitted). In fact,

> [l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Id. (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d, 73 (1965)). The defendants assert that Edwards has failed to allege facts from which it can be concluded that their conduct was extreme or outrageous.[9]

This court has held that a "routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior." Adams v. The Hartford Courant and Tribune Co., 2004 WL 1091728, at *4 (2004). Connecticut courts have also held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings, do not support a claim for intentional infliction of emotional distress." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (citations omitted); see also Perodeau, 259 Conn. at 757 (stating that individuals in the workplace should expect to be subject to workplace gossip, rivalry, personality conflicts and the like). However, the Perodeau Court would not allow persons in the workplace to be subject to conduct that

---

[9]Defendant Mary Carr also argues that Edwards' claim is time-barred. However, she mistakenly relies on the two-year statute of limitations applicable to claims of negligent infliction of emotional distress, while the statute of limitations for intentional infliction of emotional distress is three years. See Conn. Gen. Stat. § 52-577; see also Alungbe v. Bd. of Trustees of Conn. State Univ. (CSU) Sys., 283 F. Supp. 2d 674, 686 n.8 (D. Conn. 2003).

"transgresses the bounds of socially tolerable behavior," 243 Conn. at 89 (internal quotations omitted), or that would involve "an unreasonable risk of causing emotional distress . . . that . . . if it were caused, might result in bodily harm."  Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (1978).

The court finds that Edwards has alleged conduct that could be reasonably deemed to be extreme and outrageous, or "at a minimum, reasonable people could differ as to whether the defendants' conduct was extreme and outrageous."  Talit v. Peterson, 44 Conn. Supp. 490, 498 (Conn. Super. Ct. 1995) (citing 1 Restatement (Second), Torts § 46, comment h).  Count IX incorporates all the allegations that form the bases for Edwards' hostile work environment, constructive discharge, and retaliation claims, and, taking all of the allegations as true, Edwards has sufficiently plead her claim of intentional infliction of emotional distress against all defendants.[10]  Thus, the court denies the motion to dismiss Edwards' intentional infliction of emotional distress claim.

---

[10]Defendant NOI argues that Edwards failed to direct any identifiable alleged misconduct against five of the seven individual NOI defendants.  See NOI Def.'s Memorandum in Support of Summary Judgment ("Mem. in Supp.") at 25 [Doc. No. 102].  Defendants Awwad and Tynan make a similar argument in their separate Memorandum in Support of their Motion for Summary Judgment, at 8 [Doc. No. 108].  However, at this stage in the proceeding, the court will assume, as the defendants have acknowledged, see Def.'s NOI Mem. in Supp. at 26; Def.'s Awwad & Tynan Mem. in Supp. at 8, that all allegations in Edwards' Third Amended Complaint that involve unidentified "colleagues," "co-workers," or "others" should be construed to include all of the named individual defendants in this case.  Among the allegations Edwards makes against her "fellow employees and others" are: that she was subjected to repeated harassment based upon her Mexican national origin, including insulting mockery of her Hispanic accent, that she was referred to as Dopey because of her short stature and accent and that a 9-foot cut-out of Snow White was positioned outside of the building with her nickname attached, and that a series of retaliatory actions were taken against her after she filed her CCHRO complaint.  See, e.g., Third Amended Complaint at ¶¶ 34-36; 39, 41, 47, 53-54.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss [**Doc. No. 101, 104, & 108**] are DENIED as to aiding and abetting (Count Seven) and intentional infliction of emotional distress (Count Nine).  The defendants' motions to dismiss are GRANTED as to negligent infliction of emotional distress (Count Eight).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of March, 2007.


                  /s/ Janet C. Hall
                  Janet C. Hall
                  United States District Judge